## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHARLIE HOLMES**                                    **CIVIL ACTION**

**VERSUS**                                            **NO.  16-2915**

**ROBERT C. TANNER, WARDEN**                          **SECTION "G"(2)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Charlie Holmes, is incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2]  Holmes was charged in a bill of information filed on December 13, 2007 with one count of possession of cocaine in the amount of 28 to 200

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 3.

grams.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the facts determined

at trial as follows:

> The charge against Mr. Holmes arose on 13 March 2007 when New Orleans Police Department Officers Ron Zoller and Roger Caillouet, who were on routine patrol in the Sixth District, observed Mr. Holmes, who was riding a scooter, disregard a red light at the intersection of Magazine Street and Jackson Avenue.  After the officers saw this traffic violation, they attempted to stop him, but he disregarded their lights and siren, and continued to drive up Magazine Street, running another red light as he did so.  Mr. Holmes drove for several more blocks, turning onto other streets before reaching Chippewa Street.  During his flight from the officers, Mr. Holmes dropped items from his pocket, which appeared to be pens and a cell phone.  Finally, in the 2400 block of Chippewa, Mr. Holmes was able to retrieve a bag from his jacket pocket and threw it away towards the side of the street.  Officer Caillouet, who was driving the police vehicle, slowed down enough to allow Officer Zoller to exit and retrieve the bag which Mr. Holmes had thrown away.  Officer Caillouet continued his pursuit, ultimately apprehending Holmes a few blocks away.
>
> At trial, both Officers Zoller and Caillouet identified state's exhibit two as the bag which they saw Mr. Holmes throw away and which Officer Zoller retrieved.  The parties stipulated that, if Officer Harry O'Neil were called to testify, he would state that he tested the contents of the bag, that the contents tested positive for cocaine, and that the net weight of the contents was 61.58 grams.

State v. Holmes, No. 2013-KA-0324, 2013 WL 7160519, at *1-2 (La. App. 4th Cir. Aug.

28, 2013); State Record Volume 2 of 3, Louisiana Fourth Circuit Opinion,

2013-KA-0324, pages 1-2, August 28, 2013.

---

[3]St. Rec. Vol. 1 of 3, Bill of Information, 12/13/07.

A jury found Holmes guilty as charged on April 26, 2011.[4]  On June 23, 2011, the state trial court sentenced Holmes to serve twenty (20) years in prison at hard labor.[5]  The State filed a multiple bill accusing Holmes of being a third felony offender to which Holmes entered a guilty plea.[6]  The court vacated the prior sentence and sentenced Holmes as a multiple offender to serve twenty (20) years in prison at hard labor.[7]

On March 29, 2012, Holmes submitted his first state court application for post-conviction relief in which he requested an out-of-time appeal.[8]  After Holmes obtained mandamus relief from the Louisiana Fourth Circuit,[9] the state trial court denied the post-conviction application on September 17, 2012, without stated reasons.[10]  On review of that ruling, the Louisiana Fourth Circuit granted Holmes's writ application in part on

---

[4]St. Rec. Vol. 1 of 3, Trial Minutes, 4/26/11; St. Rec. Vol. 2 of 3, Jury Verdict, 4/26/11; Jury Polling, 4/26/11; Trial Transcript, 4/26/11.

[5]St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 3, 6/23/11.

[6]St. Rec. Vol. 1 of 3, Multiple Bill, 6/23/11; Sentencing Minutes, 6/23/11; Waiver of Rights - Plea of Guilty - Multiple Offender, 6/23/11; St. Rec. Vol. 2 of 3, Sentencing Transcript, pp. 3-7, 6/23/11.

[7]St. Rec. Vol. 1 of 3, Sentencing Minutes, 6/23/11; St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 7, 6/23/11.

[8]St. Rec. Vol. 2 of 3, Application for Post-conviction Relief, dated 3/29/12.

[9]St. Rec. Vol. 2 of 3, 4th Cir. Order, 2012-K-1241, 9/12/12; 4th Cir. Writ Application, 2012-K-1241, 8/16/12.

[10]St. Rec. Vol. 1 of 3, Minute Entry, 9/17/12.

October 22, 2012, and remanded the matter for the trial court to grant the out-of-time appeal.[11]

On April 15, 2013, Holmes's appointed appellate counsel filed a brief with the Louisiana Fourth Circuit that included a request for errors patent review, a motion to withdraw as counsel, and a statement indicating that counsel had found <u>no</u> non-frivolous appealable issue in connection with Holmes's conviction and sentence, all pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), and <u>State v. Jyles</u>, 704 So.2d 241 (La. 1997).[12]

On August 28, 2013, the Louisiana Fourth Circuit affirmed Holmes's conviction and sentence, finding no errors at trial and noting only an error in the sentence that would be self-correcting as a matter of law.[13] Holmes's conviction became final thirty (30) days later, on September 27, 2013, when he did not seek review of this ruling in the Louisiana Supreme Court. <u>See</u> <u>Butler v. Cain</u>, 533 F.3d 314, 317 (5th Cir. 2008) (citing <u>Roberts v. Cockrell</u>, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); <u>Jiminez v. Quarterman</u>, 555 U.S. 113, 121 (2009) (a state defendant's conviction is not

---

[11]St. Rec. Vol. 2 of 3, 4th Cir. Order, 2012-K-1475, 10/22/12; 4th Cir. Writ Application, 2012-K-1475, 10/11/12.

[12]St. Rec. Suppl. Vol. 1 of 1, Appeal Brief, 2015-KA-0086, 2/24/15.

[13]<u>Holmes</u>, 2013 WL 7160519, at *1; St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2013-KA-0324, 8/28/13.

final for purposes of seeking federal habeas review until the conclusion of the out of time appeal process).

The docket master in the state court record reflects that the state trial court received and denied Holmes's motion to correct an illegal sentence on March 26, 2014.[14]

The state record contains an application for post-conviction relief bearing Holmes's signature and dated June 24, 2014.[15] In that form application, Holmes asserted that the state trial court erred when it sustained defendant's objection to the prosecutor's indirect reference to Holmes's failure to testify but failed to grant a mistrial.[16] In the memorandum attached to the application,[17] which was signed by Holmes but dated July 1, 2014, he asserted the following grounds for relief:[18] (1) The state trial court erred when it sustained defendant's objection to the prosecutor's indirect reference to Holmes's failure to testify but failed to grant a mistrial. (2) He received ineffective assistance of appellate counsel because counsel failed to assert the claim that the prosecutor prejudiced the defense with impermissible argument. (3) He received ineffective assistance of counsel because trial counsel failed to prepare and present a defense.

---

[14]St. Rec. Vol. 1 of 3, Docket Master, 3/26/14 entry. There is no such document or order appearing in the record.

[15]St. Rec. Vol. 3 of 3, Application for Post-Conviction Relief, dated 6/24/14. Holmes would later suggest in other pleadings that he mailed this application "on or about June 10, 2014."

[16]Id., at p. 3, Claim 1.

[17]Id.

[18]St. Rec. Vol. 3 of 3, Supporting Memorandum, dated 7/1/14.

When he received no response to his application, Holmes sought mandamus relief in the Louisiana Fourth Circuit by writ application signed and submitted on September 28, 2014.[19] The court denied the writ application on November 19, 2014, indicating that the application was not filed in the trial court record, and he did not include a copy with his writ application.[20] The court suggested that Holmes attempt to refile his application in the state trial court. Despite the appellate court's ruling, on January 16, 2015, the state trial court denied Holmes's application for post-conviction relief for failure to provide supporting evidence.[21]

Earlier on December 17, 2014, Holmes filed another application for writ of mandamus in the Louisiana Fourth Circuit seeking to compel the trial court to rule on his post-conviction application.[22] On February 5, 2015, the court granted the writ application for the limited purpose of transferring the post-conviction application to the state trial court for consideration if the court had not already done so.[23] The state trial court later

---

[19]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2014-K-1143, 10/1/14 (dated 9/28/14).

[20]St. Rec., Vol. 3 of 3, 4th Cir. Order, 2014-K-1143, 11/19/14.

[21]St. Rec. Vol. 1 of 3, Minute Entry, 1/16/15.

[22]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2015-K-0101, 1/29/15 (see cover letter dated 12/17/14).

[23]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2015-K-0101, 2/5/15.

entered an order stating that it had already ruled on Holmes's post-conviction application.[24]

In the meantime, on February 2, 2015, Holmes signed and submitted a writ application to the Louisiana Fourth Circuit seeking review of the state trial court's January 16, 2015, ruling denying post-conviction relief.[25]  The court denied the writ application on March 26, 2015, finding no error in the trial court's judgment.[26]  The Louisiana Supreme Court denied Holmes's related writ application on January 25, 2016.[27]

## II.    FEDERAL HABEAS PETITION

On May 2, 2016, after correction of certain deficiencies, the clerk of this court filed Holmes's federal habeas corpus petition in which he asserts the following grounds for relief:[28]  (1) His Fifth Amendment rights were violated when the prosecutor made indirect reference to his failure to testify. (2) His appellate counsel was ineffective for failing to present a viable claim to the appellate court that the prosecutor prejudiced his

---

[24]St. Rec. Vol. 1 of 3, Minute Entry, 4/24/15.

[25]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2015-K-0237, 3/9/15 (dated 2/3/15).

[26]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2015-K-0237, 3/26/15.

[27]State ex rel. Holmes v. State, 184 So.3d 1 (La. 2016); St. Rec., Vol. 3 of 3, La. S. Ct. Order, 2015-KH-0743, 1/25/16; La. S. Ct. Writ Application, 15-KH-743, 4/14/15 (dated 4/5/15); La. S. Ct. Letter, 2015-KH-743, 4/14/15.

[28]Rec. Doc. No. 3.

case with impermissible argument. (3) He received ineffective assistance of counsel because trial counsel failed to call witnesses and present a defense.

The State filed an answer in opposition to Holmes's petition asserting that the federal petition was not timely filed.[29]  The State conceded exhaustion of state court review on the second and third issues, but asserts that the first claim of prosecutorial misconduct is not exhausted and is procedurally barred from review because it differs from the argument presented to the state courts.  Alternatively, the State argues that Holmes's claim lacks merit.

III.    <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[30] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).   The AEDPA therefore applies to Holmes's petition, which, for reasons discussed below, is deemed filed in

---

[29]Rec. Doc. No. 7.

[30]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

federal court on April 4, 2016.[31]   The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.   Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Holmes exhausted his second and third claims, but argues that (1) his federal petition was not timely filed and (2) he is procedurally barred from bringing his first claim, which was not exhausted on the same grounds asserted in this court.   For the following reasons, I find that the State's limitations defense is not supported by the record and must be rejected.   In addition, as discussed below, the state has failed to establish a procedural bar to review of Holmes's first claim based on the Fifth Amendment.

---

[31]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).   The clerk of this court initially received and filed Holmes's deficient petition on April 7, 2016, and it was later docketed on May 2, 2016, after correction of the deficiencies.  The case ultimately was opened on May 6, 2016, when the clerk received the filing fee from Holmes after denial of pauper status.  Nevertheless, Holmes dated the signature on his original petition on April 4, 2016, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

A.    <u>LIMITATIONS DEFENSE</u>

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[32]  <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  In my view, the State has not properly determined the date of the filing of Holmes's application for post-conviction relief in the state trial court in this case and instead relies on unsupported speculation.

Holmes's conviction became final on September 27, 2013, when he did not seek review of his appeal in the Louisiana Supreme Court.  Under a literal application of Section 2244, Holmes had one year from the finality of his conviction, or until Monday, September 29, 2014,[33] to file a federal habeas corpus petition, which he did not do.  His

---

[32]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

[33]One year after September 27, 2013, was Saturday, September 27, 2014, which extends the filing deadline to Monday, September 29, 2014.  Fed. R. Civ. P. 6(a)(1)(C).

petition should be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the two ways recognized in the applicable law.

First, the United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Holmes does not assert, and the record does not reveal, any rare or exceptional circumstances for this court to grant him equitable tolling. See Holland v. Florida, 560 U.S. 631, 651-54 (2010) (equitable tolling would be warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals

court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.

12

Flanagan, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision

as a tolling statute.  Duncan, 533 U.S. at 175-178.

    The decisions of the Fifth Circuit and other federal courts have held that because

this statute is a tolling provision, the time during which state court post-conviction

proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed
> state habeas application is pending must be excluded when calculating the
> one[-]year period.  Under the plain language of the statute, any time that
> passed between the time that [petitioner's] conviction became final and the
> time that his state application for habeas corpus was properly filed must be
> counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL

609926, at *1 (4th Cir. Aug. 27, 1998); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D.

Md. 1998).

    For a post-conviction application to be considered "properly filed" within the

meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable

procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544

U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is]

the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303,

306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir.

1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).  The timeliness

consideration in Louisiana, for purposes of the AEDPA, requires application of a prison

mailbox rule to state pleadings filed by a prisoner.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'").

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.  Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In Holmes's case, the one-year AEDPA statute of limitations period began to run on September 28, 2013, the day after his conviction became final under federal law.

Holmes asserted in his habeas corpus petition and in pleadings and correspondence in the state court record that he mailed the relevant application for post-conviction relief application to the state trial court on June 10, 2014. While there is nothing objective in the record to support this date, the record contains an application for post-conviction relief that was signed and dated by Holmes on June 24, 2014 with an attached memorandum signed and dated on July 1, 2014.[34] No explanation can be found for when or how this document came to be a part of the state trial court record.

The docket master in the certified state court record contains no entries after March 26, 2014, when the state trial court apparently denied a motion to correct an illegal sentence.[35] A more current docket master, a copy of which I have obtained and separately filed in the record, also has no entries related to Holmes's 2014 pursuit of post-conviction relief in the state trial court.[36] The absence of documents and docket entries is contrary to the fact that the state trial court eventually ruled on an application for post-conviction relief as evidenced by the minute entry dated January 16, 2015. It is not surprising that the Louisiana Fourth Circuit could not find that an application had been filed in the trial court record when it denied Holmes's mandamus relief in

---

[34]St. Rec. Vol. 3 of 3, Application for Post-Conviction Relief, dated 6/24/14; Supporting Memorandum, dated 7/2/14.

[35]St. Rec. Vol. 1 of 3, Docket Master.

[36]Rec. Doc. No. 13.

September of 2014. However, "filed" is not the same as "mailed" for purposes of the prisoner mailbox rule applicable to Holmes's state court pleadings.

The incomplete and inconsistent docketing of pleadings does not support the State's assumption that nothing was mailed to the state trial court before expiration of the AEDPA statute of limitations. The State simply dismisses the notion that Holmes claimed to have mailed something to the state trial court on June 10, 2014, and ignores the relevance of the signed and dated application for post-conviction relief, which could have been mailed to the state trial court on or before July 1, 2014, the date of the attached memorandum. The State simply assumes that nothing was timely mailed to the state trial court and some other copy of a post-conviction application was mailed to the state trial court after the September 30, 2014, order from the Louisiana Fourth Circuit.

Even if Holmes delayed mailing his application to the state trial court, the record is unreliable and does not support the State's conjecture. There has never been an official docket entry of any filing of a post-conviction application before or after September 30, 2014. The record simply contains nothing to support the State's speculation or any other explanation for how or when Holmes's application for post-conviction relief ended up before the state trial court for a ruling.

The state court record itself is inconsistent, incomplete and replete with lapses in the recording (and filing) of documents and court orders. It is not a reliable source for determining the receipt and filing dates of any of the documents included in it and does

not support a limitations defense in the manner suggested by the State. I cannot accept arguments based on speculation and assumptions, especially in light of the uncertainty of the state court record.

Based on what is apparent in the record, Holmes submitted an application for post-conviction relief to the state trial court. The only copy of such a document contained in the record includes a memorandum signed and dated by Holmes on July 1, 2014. By that time, only 276 days of the AEDPA one-year statute of limitations had lapsed. Holmes's application for post-conviction review remained pending in the state courts through review in the Louisiana Fourth Circuit and the Louisiana Supreme Court, which was completed on January 25, 2016. The AEDPA one-year statute of limitations began to run the next day, January 26, 2016, and did so for another seventy (70) days, until April 4, 2016, when Holmes signed and submitted his federal petition for filing in a federal court. Thus, Holmes allowed only 346 days of the one-year period to lapse before filing his federal petition.

For these reasons, I cannot conclude on this record that Holmes did not have a properly filed pending state proceeding that tolled the AEDPA limitations period before it expired. See 28 U.S.C. § 2244(d)(2) ("the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claims is pending shall not be counted toward any period of

limitation under this section"). Under these circumstances, I conclude that this federal habeas corpus petition was timely filed in this court.

B.    PROCEDURAL BAR

Holmes alleges in his first claim that his Fifth Amendment rights were violated when the prosecutor indirectly referred in closing argument to petitioner's failure to testify. The State argues that this claim is procedurally barred, because Holmes made a "parallel claim in [his state post-conviction] application only alleging an error by the state trial court in not ordering a mistrial pursuant to the comment, and not even once mentioning a violation of his rights under the Fifth Amendment."[37]

The State apparently is arguing that Holmes's claim in this court is not the same as the claim presented to the state courts, and therefore is not exhausted and may be in technical procedural default if he attempts to return to the state courts. Papillion v. Cain, No. 05-1116, 2007 WL 3046063, at *9 (W.D. La. Jul. 31, 2007) (citing Bledsue v. Johnson, 188 F.3d 250, 254–255 (5th Cir.1999)); see also, Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1986); O'Sullivan v. Boerckel, 526 U.S. 838 (1999). In this case, it is reasonable to conclude that Holmes is now unable to litigate any new post-conviction claims in the Louisiana courts based on the per curiam decision of the Louisiana Supreme

---

[37]Record Doc. No. 7 at pp. 10-11.

Court following denial of his post-conviction review.[38]  Thus, federal habeas review would be barred "... unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750-51.

I am not convinced, however, that Holmes's claim contained no reference to the Fifth Amendment prohibition he now asserts.  In the state courts, Holmes asserted that the state trial court erred when it sustained the defense objection to the prosecutor's remarks related to his failure to testify and did not grant a mistrial under La. Code Crim. P. art. 770(3).  The mistrial contemplated by Article 770(3) is in fact premised on the Fifth Amendment's right against self-incrimination:

> The purpose behind art. 770(3)'s prohibition against such prosecutorial comment is to protect the defendant's Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. State v. Fullilove, 389 So.2d 1282, 1283 (La. 1980); Griffin v. California, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed.2d 106 (1965).

State v. Mitchell, 779 So.2d 698, 701 (La. 2001).

Thus, by urging the mandated mistrial under Art. 770(3), Holmes was seeking protection of his Fifth Amendment rights.  The procedural bar asserted by the State is based on Holmes's alleged failure to exhaust.  When a federal court is faced with an

---

[38]State ex rel. Holmes, 184 So.3d at 1; St. Rec., Vol. 3 of 3, La. S. Ct. Order, 2015-KH-0743, 1/25/16.

unexhausted claim, the court may nevertheless address the claim when, like this one, it is without merit.  28 U.S.C. § 2254(b).  For this reason, this court need not consider the State's suggestion of a technical procedural default, since the unexhausted claims can be disposed of on the merits.

VI.    <u>STANDARDS OF A MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert. denied</u>, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir.

2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000); <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001);  <u>Hill</u>, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  <u>White v. Woodall</u>, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011), and <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" <u>White</u>, 134 S. Ct. at 1706 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

The AEDPA's deferential standard of review under Section 2254(d) and Williams, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). To the extent Holmes's first claim presents issues not addressed by the state courts on the merits, the deferential AEDPA standards of review do not apply. Cullen v. Pinholster, 563 U.S. 170, 185-86 (2011); Henderson v. Cockrell, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under pre-AEDPA de novo standards of review. Id. at 598 (citing Jones v. Jones, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); Carty v. Thaler,

583 F.3d 244, 253 (5th Cir. 2009).  Thus, I will consider Holmes's first claim de novo as necessary.

VII.    <u>PROSECUTOR'S COMMENTS (CLAIM NO. 1)</u>

Holmes alleges that he is entitled to a new trial based on a comment made by the prosecutor during closing argument, which he contends necessarily focused the jury's attention on his failure to testify in violation of his Fifth Amendment rights.  He also asserts that the appropriate remedy, in addition to sustaining the objection, was for the state trial court to grant a mistrial under La. Code Crim. P. 770(3) and related state case law.  Holmes relies upon the following statement made by the prosecutor, to which his counsel successfully objected:[39]

> MS. HOLLAND:  Also if you remember in opening statements, <u>the defense counsel</u> said that the defendant was being harassed by the police.  If you are going to be harassed by police -- well first, he didn't show any of that.

On direct appeal, although Holmes's appointed counsel filed an <u>Anders</u> brief, she mentioned this objection in an effort to establish that there was no error under La. Code Crim. P. art. 770(3) when the state trial court did not declare a mistrial.  The Louisiana Fourth Circuit also found no trial errors apparent from the record when it affirmed Holmes's conviction.  Holmes later asserted on post-conviction review that sustaining the objection required the state trial court to grant a mistrial.  The Louisiana Supreme

---

[39]St. Rec. Vol. 2 of 3, Trial Transcript, p. 32, 4/26/11 (emphasis added).

Court issued the last reasoned opinion on the issue, indicating that Holmes had failed to meet his burden of proof under La. Code Crim. P. art. 930.2.

As an initial matter, to the extent Holmes asserts that the state trial court erred in failing to comply with state law, that is not a cognizable issue for this federal habeas court.  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).  Errors made under state law will not warrant federal habeas review.  Swarthout v. Cooke, 562 U.S. 216, 219 (2011); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).  The United States Fifth Circuit has specifically addressed state court error involving mistrials:

> Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance.

Smith v. Whitley, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994).  Thus, this court must not consider whether Louisiana law would have required the granting of a mistrial, nor is it required to determine whether the state appellate court should have found that an error occurred under state law.

Instead, this court must focus on Holmes's claim that the prosecutor's comment violated his right against self-incrimination under the Fifth Amendment. This presents the court with a mixed question of law and fact. Accord Montoya v. Collins, 955 F.2d 279, 286 (5th Cir. 1992). Under the AEDPA, the court would be required to determine whether the state court's denial of relief was contrary to or an unreasonable application of federal law. To the extent the claim was not presented in this context to the state courts, however, I review it de novo.

A prosecutor's comments on a defendant's exercise of his Fifth Amendment right not to testify are constitutionally impermissible. Griffin v. California, 380 U.S. 609, 615 (1965). A prosecutor's remarks must be considered in the context of the situation in which they were made. United States v. Delgado, 672 F.3d 320, 335 (5th Cir. 2012); Hernandez v. Thaler, 440 F. App'x 409, 416 (5th Cir. 2011). To determine whether a petitioner's Fifth Amendment rights were violated, the proper inquiry is to determine (1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence. Cotton v. Cockrell, 343 F.3d 746, 751 (5th Cir. 2003); see also, United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996) (quoting United States v. Collins, 972 F.2d 1385, 1406 (5th Cir. 1992)).

No manifest intent to comment on a defendant's failure to testify occurs if there is another "equally plausible" explanation for a prosecutor's remarks. Lee v. Michael,

476 F. App'x 29, 31 (5th Cir. 2012) (quoting United States v. Collins, 972 F.2d 1385, 1406 (5th Cir. 1992)); Grosz, 76 F.3d at 1326.  As for the character of the remark, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so."  (citation, emphasis, and internal quotation marks omitted) Grosz, 76 F.3d at 1326; Lee, 476 F. App'x at 31.  Moreover, the Fifth Amendment is not violated when the comments are made in "a fair response to a claim made by defendant or his counsel."  United States v. Robinson, 485 U.S. 25, 32 (1988).  In assessing the meaning and impact of a prosecutor's comments, the Supreme Court cautions that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."  Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974).

In this case, the comments made by the prosecutor during closing arguments were not in violation of the Fifth Amendment as described in Griffin.  I recognize that defense counsel's objection was sustained by the state trial court.  This was done, however, without defense counsel providing a basis for the objection or the state court providing reasons for its ruling.  The first indication that the comment was believed to have been an inappropriate reference to Holmes's failure to testify was made by Holmes's appointed appellate counsel.  Nevertheless, even if that were the unspoken-at-trial basis

26

for the objection and the ruling, Holmes has not established a violation of his Fifth Amendment rights.

Review of the State's closing argument indicates that the prosecutor was attempting to demonstrate that there had been no evidence presented at trial to support defense counsel's claim during opening statements that Holmes was being harassed by the police. A plain reading of the words used by the prosecutor, and in the context they were used, indicates that the comment was a general reference to the lack of evidence to support that claim made by Holmes's counsel, and not a direct comment on Holmes's failure to testify. The record also does not establish that the jury necessarily took the prosecutor's remarks as such a reference or that it had any impact on their verdict in light of the evidence of Holmes's guilt.

Holmes has not established that a Griffin error occurred in violation of his Fifth Amendment rights. Gongora v. Thaler, 710 F.3d 267, 274 (5th Cir. 2013) (citing Harrington, 562 U.S. at 101-102); see Hernandez, 440 F. App'x at 417 ("In this case, however, one could plausibly interpret the prosecutor's remarks as referring to the lack of corroboration for Hernandez's story in the testimony of other actual and potential witnesses."). He is not entitled to relief under a de novo review and otherwise has failed to establish that the denial of relief on his claim was contrary to or an unreasonable application of federal law.

## VIII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIMS NOS. 2 AND 3)

Holmes alleges that his appellate counsel provided ineffective assistance when she failed to assert on appeal the issue of the prosecutor's comment on his failure to testify. He also alleges that his trial counsel failed to investigate and present key witnesses at trial and present other evidence, including Holmes's own testimony. Holmes asserted these claims on post-conviction review in state courts. In the last reasoned decision on the issue, the Louisiana Supreme Court concluded without discussion that Holmes failed to establish that he received ineffective assistance of counsel under the standards in Strickland v. Washington, 466 U.S. 668 (1984).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 668, relied on by the state courts, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of

reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The

> Strickland standard is a general one, so the range of reasonable applications
> is substantial.  Federal habeas courts must guard against the danger of
> equating unreasonableness under Strickland with unreasonableness under
> § 2254(d).  When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable.  The question is whether there is any reasonable
> argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."

Cullen, 563 U.S. at 190 (quoting Knowles, 556 U.S. at 123).  This court must therefore

apply the "strong presumption" that counsel's strategy and defense tactics fall "within the

wide range of reasonable professional assistance."  Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable

unless clearly proven otherwise by the petitioner.  Id., 466 U.S. at 689; Geiger v. Cain,

540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999).

In assessing counsel's performance, a federal habeas court must make every effort to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time

of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d

273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when

supported by the circumstances are objectively reasonable and do not amount to

unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir.

1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564

(5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.    <u>APPELLATE COUNSEL</u>

Holmes alleges that his appellate counsel was ineffective when she failed to argue on direct appeal the claim that the prosecutor made an improper reference to his failure to testify during her closing argument.  Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985).  The <u>Strickland</u> standard for judging performance of counsel also applies to claims of ineffective appellate counsel.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>Goodwin v. Johnson</u>, 132 F.3d 162, 170 (5th Cir. 1997).

To prevail on a claim that <u>appellate</u> counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a non-frivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  <u>Briseno v. Cockrell</u>, 274 F.3d 204, 207 (5th Cir. 2001); <u>Smith</u>, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every non-frivolous available ground for appeal.  <u>Green v. Johnson</u>, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing <u>Evitts</u>, 469 U.S. at 394).  On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue <u>every</u> non-frivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983).  Appellate counsel has the discretion to

exclude even a non-frivolous issue if that issue was unlikely to prevail.  See Anderson v. Quarterman, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit.  As such, failure to raise these issues did not prejudice Anderson."); Penson v. Ohio, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); Kossie v. Thaler, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).  Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue.  Smith, 528 U.S. at 288;  Jones, 463 U.S. at 754.

Although Holmes's appointed counsel filed an Anders brief on direct appeal, she discussed the objection made by defense trial counsel to the prosecutor's comment during closing argument that Holmes "didn't show any of that," referencing the assertion that he was harassed by police.  Holmes's appellate counsel conceded that the state trial court made no error under state law when it failed to admonish the jury or grant a mistrial, because these remedies would be required under La. Code Crim. P. art. 770(3) only if requested by defense counsel.  Because defense trial counsel did not make a request for either, there was no error on the part of the state trial court.  In addition, based

on Louisiana Fourth Circuit precedent, Holmes's appellate counsel submitted that the apparent indirect reference to Holmes's silence, like the one made by this prosecutor, would not have been sufficient to warrant a mistrial even if one had been requested. The Louisiana Fourth Circuit presumably agreed, because it too concluded that there were no trial errors apparent from the record when it affirmed Holmes's conviction.

Under relevant federal law, Holmes has failed to establish that his appellate counsel was ineffective. His counsel noted the alleged comment on his silence and made a well-reasoned decision not to assert the claim for review. Appellate counsel thoroughly discussed the basis for her contention that the trial court had not erred, thereby explaining her position why the incident had not presented a non-frivolous claim for the appellate court to review. Holmes's counsel addressed the issue in a manner sufficient to call it to the attention of the appellate court, in case the court itself considered it an error, but the state appellate court agreed that there were no trial errors to review.

Based on her analysis, Holmes's appellate counsel correctly concluded that La. Code Crim. P. art. 770(3) by its very language did not require an admonition or mistrial where none were requested by trial counsel.[40] The Louisiana courts would not mandate

---

[40]La Code Crim. P. art. 770 provides in relevant part as follows (emphasis added):
**Upon motion of a defendant**, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:  [. . .]
(3) The failure of the defendant to testify in his own defense;  [. . .]
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial.  **If the defendant, however, requests that only an admonition be**

a mistrial in a situation like the one she described, where the indirect reference was not made with an apparent intent to focus attention on the defendant's failure to testify and instead was merely a comment on the evidence.  See, e.g., State v. Smith, 186 So.3d 703 (La. App. 2d Cir. 2016) (prosecutor's comment was made in an effort to prevent the defense counsel from referencing hearsay statements when the defendant had not testified as to the alleged statements).

For the reasons discussed above, Holmes has not established that a Fifth Amendment violation occurred.  Counsel was not remiss in failing to urge a claim that would not have been successful.  Holmes cannot establish that his appellate counsel failed to assert a non-frivolous issue on appeal for which he was likely to obtain relief. For these reasons, the state courts' denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  Holmes is not entitled to relief on this claim.

B.    TRIAL COUNSEL

Holmes alleges that his trial counsel was ineffective in failing to call known witnesses, present a defense or allow him to testify.  For the following reasons, Holmes has not established that his trial counsel's performance was deficient or prejudicial under Strickland.

---

**given**, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

1.    <u>Uncalled Witnesses</u>

It is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" <u>Graves v. Cockrell</u>, 351 F.3d 143, 156 (5th Cir. 2003) (<u>quoting</u> <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978)); <u>Bray v. Quarterman</u>, 265 F. App'x 296, 298 (5th Cir. 2008).  To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.  <u>Day v. Quarterman</u>, 566 F.3d 527, 538 (5th Cir. 2009) (citing <u>Bray</u>, 265 F. App'x at 298).

Holmes's claims that two witnesses, Charlie Brown and Ralph Lomax, would have testified that there was no police chase before his arrest.  Holmes contends that these two witnesses would have testified that the officers found nothing on him when he was searched, and one of the officers stepped back a few steps to pick up the bag of drugs.  Holmes also argues that trial counsel should have called his mother and aunt to establish how they knew where to find him in the neighborhood to retrieve the scooter.

Although Holmes's claims that these witnesses were available to testify at trial, he has not presented any evidence to support this assertion.  His allegations as to what each proposed witness would testify are purely speculative and unsupported by any

affidavit or other statement to confirm the anticipated testimony. Holmes is required to present more than conclusory assertions to establish ineffective assistance of counsel. Green, 160 F.3d at 1042 ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

In addition, Holmes has not suggested that these people would testify differently from the officers. For example, the supposed testimony from Brown and Lomax would have been that nothing was found on Holmes and that the drugs had been picked up by an officer and brought to where Holmes was stopped. That testimony is the same as the testimony from the officers who appeared before the jury. The officers testified that as they followed Holmes, he threw away an item that was later determined to be the bag of cocaine. Their testimony was that one of the officers got out of the car to retrieve the bag and the other officer proceeded further and eventually stopped Holmes. When he was searched, they found no items on him, although they had the bag of cocaine that had been retrieved down the road.

In addition, the trial testimony established that Holmes was riding his scooter and was seen by the officers to repeatedly disregard the traffic signs. To the extent Holmes wanted his trial counsel to present evidence from his friends and family that he was joy riding on his scooter in the neighborhood would have been repetitive of the State's evidence. Counsel's decision perhaps to avoid presenting testimony that would have bolstered rather than countered the testimony of the police officers was a sound strategic

decision.  Williams v. Cockrell, 31 F. App'x 832 (5th Cir. 2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)) ("'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'").  Holmes has not established that counsel's failure to call these witnesses was deficient performance or otherwise prejudicial to the defense.

2.    Right to Testify

Holmes also contends that he told his trial counsel he wanted to testify on his own behalf and to file pretrial documents establishing that he was being harassed by police before this event. Holmes's claim that counsel prevented him from testifying is conclusory, unsupported and fails to demonstrate that his counsel actually prevented him from testifying.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments.  Rock v. Arkansas, 483 U.S. 44, 49 (1987); Bower v. Quarterman, 497 F.3d 459, 473 (5th Cir. 2007); Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001); Jordan v. Hargett, 34 F.3d 310, 312 (5th Cir. 1994).  When, as here, the petitioner alleges that his counsel, not the court or the State, prevented him from testifying, the Fifth Circuit has held that the "'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'"  Sayre, 238 F.3d at 634 (quoting United States v. Brown, 217 F.3d 247, 258-59 (5th Cir. 2000)).

A criminal defendant may waive his right to testify if that waiver is knowing, intelligent and voluntary. <u>Bower</u>, 497 F.3d at 473 (citing <u>Emery v. Johnson</u>, 139 F.3d 191, 198 (5th Cir. 1997)). A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'" <u>Emery</u>, 139 F.3d at 198 (quoting <u>United States v. Teague</u>, 908 F.2d 752, 759 (11th Cir. 1990)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." <u>Turcios v. Dretke</u>, No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing <u>Underwood v. Clark</u>, 939 F.2d 473, 475-76 (7th Cir. 1991)); <u>accord</u> <u>Jones v. Cain</u>, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); <u>Davis v. Quarterman</u>, No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007). The <u>Underwood</u> court specifically identified various problems that are bound to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof. <u>Underwood</u>, 939 F.2d at 475-76. Adopting the reasoning in <u>Siciliano v. Vose</u>, 834 F.2d 29, 31 (1st Cir. 1987), the <u>Underwood</u> court recognized that such an assertion, even if made under oath,

> is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the

> lawyer who allegedly forbade his client to testify – to give the claim
> sufficient credibility to warrant a further investment of judicial resources
> in determining the truth of the claim.

Underwood, 939 F.2d at 475-76; accord Gross v. Knight, 560 F.3d 668, 672 (7th Cir.),

cert. denied, 558 U.S. 950 (2009).

> Citing Underwood, the Fifth Circuit has
>
> observed that allowing a bare assertion of a right-to-testify violation to
> precipitate the further investment of judicial resources is problematic. See
> [Underwood, 939 F.2d at 476] . . . (stating that a conclusory assertion by
> a defendant that his right to testify was denied him is insufficient to require
> a hearing because "[i]t just is too facile a tactic to be allowed to succeed").
> We agree that there is "a grave practical difficulty in establishing a
> mechanism that will protect a criminal defendant's personal right . . . to
> testify in his own behalf without rendering the criminal process
> unworkable."

United States v. Martinez, 181 F.3d 627, 628 (5th Cir. 1999) (quoting Underwood, 939

F.2d at 475). "While the Fifth Circuit has adopted the general rule of law enunciated in

Underwood . . . , the Court has further opined that [summary] dismissal is inappropriate

unless the habeas petitioner has first been afforded the opportunity to amend his

pleadings to provide the evidence necessary to support his claim." Savoy v. Cain, No.

06-1744, 2008 WL 276542, at *1 (W.D. La. Jan. 29, 2008) (citing Martinez, 181 F.3d at

629); but see, Silva-Garcia v. United States, No. 10-cr-2224, 2012 WL 5464639, at *4

(S.D. Tex. Nov. 8, 2012) (finding that the Fifth Circuit has not created a right to

supplement a bare allegation of right-to-testify).

Under current United States Supreme Court precedent after <u>Martinez</u> and <u>Savoy</u>, a federal habeas court is limited to consideration of the evidence and the record that were before the state courts that reviewed the merits of the claim at issue. <u>Cullen</u>, 131 S. Ct. at 1400; <u>Blue v. Thaler</u>, 665 F.3d 647, 656 (5th Cir. 2011); <u>Gallow v. Cooper</u>, 505 F. App'x 285, 295-96 (5th Cir. 2012); <u>Thomas v. Thaler</u>, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013). Holmes provided no evidence or arguments to the state courts other than those before this court, and no evidence should be considered for the first time on federal habeas review.

Construed broadly, Holmes's claims are that he told his counsel he wanted to testify about the incident and his history with the police, and counsel would not allow it. As indicated in <u>Underwood</u>, however, even a verified petition is insufficient to prove such a claim on habeas corpus review. Holmes's self-serving allegations fall far short of establishing that counsel <u>prevented</u> him from testifying. His argument, therefore, is in a similar posture as that invalidated and rejected in <u>Underwood</u>. There is nothing in this record sufficient to prove an actual violation of his right to testify.

Even if counsel advised him against testifying, Holmes has not established that such advice was unreasonable or prejudicial. The record reflects that Holmes had a lengthy criminal history, evidenced in part in the multiple offender bill later filed against him. It was sound trial strategy to keep this information from the jury and avoid a resulting challenge to Holmes's credibility. On the stand, Holmes would have been

exposed to cross-examination regarding his guilt and character, including his prior criminal history.  In addition, Holmes does not indicate, nor has he ever indicated, any specific proposed testimony he might have provided that would actually have been beneficial to his defense.

Under these circumstances, it was reasonable for defense counsel to have determined that the prejudice posed by potential cross-examination outweighed any benefit that Holmes's testimony might have provided his defense.  Holmes has not demonstrated that the outcome of the trial would have been different but for counsel's decision to rest the defense without his testimony.  For these reasons, Holmes has not demonstrated any deficiency or prejudice resulting from counsel's failure to call him or any other known witness to testify.  Any denial of relief by the state courts on this issue was not contrary to or an unreasonable application of <u>Strickland</u>.  Holmes is not entitled to relief on this claim.

## **<u>RECOMMENDATION</u>**

For the foregoing reasons, it is **RECOMMENDED** that Holmes's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[41]

New Orleans, Louisiana, this _____10th_____ day of November, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[41]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.